UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY HARRIS,

                    Plaintiff,

  – against –

BOARD OF EDUCATION OF THE CITY
SCHOOL DISTRICT OF THE CITY OF
NEW YORK, a/k/a "The New York City
Department of Education",

                  Defendant.

**JUDGMENT,
MEMORANDUM, AND
ORDER**

16-CV-3809

**Appearances**

**<u>Plaintiff</u>**

**<u>Defendant</u>**

**Gary R. Novins**
**Jonathan A Tand**
Jonathan A. Tand & Associates
990 Stewart Ave Suite 130
Garden City, NY 11530

**William A Grey**
**Natalie Sharon Marcus**
New York City Law Department
100 Church St
New York, NY 10007

**Jack B. Weinstein, Senior United States District Judge:**

I.   Introduction ......................................................................................................1

II.  Facts .................................................................................................................2

   A.   Initial Proceedings ...................................................................................2

   B.   Motion to Dismiss and Motion for Summary Judgment............................5

III. Law...................................................................................................................6

   A.   Standard for Summary Judgment..............................................................6

   B.   Statute of Limitations ..............................................................................6

      1.   42 U.S.C. § 1983............................................................................6

      2.   NYSHRL, NYCHRL, and New York Tort Claims .........................7

      3.   Continuing Violation.......................................................................7

   C.   Constitutional Violations under § 1983 ....................................................8

      1.   First Amendment, 42 U.S.C. § 1983 ...............................................8

      2.   Fourteenth Amendment, 42 U.S.C. § 1983 ......................................9

      3.   Due Process...................................................................................12

IV.  Application of Law to Facts...........................................................................13

   A.   NYSHRL, NYCHRL, and New York Tort Claims..................................13

   B.   Constitutional Claims under § 1983 ........................................................14

      1.   First Amendment, 42 U.S.C. § 1983 .............................................14

      2.   Fourteenth Amendment, 42 U.S.C. § 1983 ....................................16

      3.   Statute of Limitations on § 1983 Claims .......................................29

      4.   *Monell* Liability ...........................................................................29

V.   Conclusion ......................................................................................................29

I.   **Introduction**

    Essentially this case – as do many of our teacher discrimination cases – reveals fundamental stresses in our public education system: a good faith attempt by an incoming principal to improve the quality of teaching in a poorly performing school, clashing with experienced, devoted teachers resenting criticism of their teaching methods and the increased

1

discipline and changes sought to be imposed on them.  Here, if there was any discrimination –
and there appears to be none – it was not age-based, as alleged.  The matter is resolved in favor
of defendant on the basis of the relevant statute of limitations and the failure to take advantage of
appropriate administrative remedies.

Plaintiff sues her former employer, the Board of Education of the City School District of
the City of New York ("DOE") for discrimination against her on the basis of her age, in violation
of federal, state, and city law.   She also asserts claims of negligent hiring and improper
supervision by her principal.

Defendant moves for summary judgment on all claims.  The motion is granted.

## II.    Facts

### A.  Initial Proceedings

Plaintiff Mary Harris is 57 years old.  She was employed by defendant DOE from 1986 to
2015.  Compl., July 7, 2016, ECF No. 1 ("Compl."), at ¶ 8.  She began work as a
paraprofessional; after she received her Bachelor's degree, she became a full-time teacher.  *Id.*
Eventually she earned two Master's degrees.  *Id.*  From 2006 on, plaintiff worked for defendant
in its MS 226 middle school as a language arts teacher in the English Language Arts department.
*Id.* at ¶ 10.

She received positive evaluations until 2010, when Ms. Rushell White became the
principal of MS 226, and plaintiff's supervisor.  *Id.* at ¶¶ 12-14.  Ms. White is younger than
plaintiff.  *Id.* at ¶ 16.

Age discrimination by Ms. White and other MS 226 administrators is claimed.  Ms.
White assigned plaintiff to teach an Integrated Co-Teaching class ("ICT").  Pursuant to New
York law in 2010, such a class had to be taught by two people – a special education teacher and a

general education teacher.  *Id.* at ¶¶ 20-21.  Plaintiff is a general education teacher.  She alleges that the special education teacher assigned to her course was often absent because of a pregnancy, and eventually left on maternity leave.  *Id.* at ¶ 23.  Plaintiff asked Ms. White to reassign a new special education teacher to the course to comply with New York law.  When Ms. White failed to do so, plaintiff complained to her union.  The union reported the apparent violation to the State.  *Id.* at ¶¶ 24-26.

Following this incident, Ms. White allegedly expressed hostility towards plaintiff.  *Id.* at ¶ 27.  Plaintiff claims that Ms. White: (1) made a derogatory comment that she would not allow her own son to be placed in plaintiff's class; (2) subjected plaintiff to excessive random classroom checks; (3) gave plaintiff unjustified "Ineffective" ratings for the 2013/2014 and 2014/2015 academic years; (4) withheld necessary test preparation material for state-mandated tests ("Test Ready material") from plaintiff, in an attempt to cause plaintiff's students to perform poorly and use this reason to fire plaintiff; (5) expressed dislike of plaintiff to a student; and (6) issued a letter of excess to plaintiff, changing her employment conditions materially.  *Id.* at ¶¶ 28-68.

Plaintiff reported the "Ineffective" rating to her union as related to age discrimination.  Def.'s Local Rule 56.1 Statement of Undisputed Material Facts, Dec. 15, 2016, ECF No. 28 ("Def.'s Rule 56.1 Statement"), at ¶¶ 83-84.  A hearing was provided.  The Opinion and Award issued concluded that plaintiff's "Ineffective" rating was not given because of harassment or reasons other than inadequate job performance.  Decl. in Supp. of Def.'s Mot. for Summ. J. ("Marcus Decl.") at Ex. K, Dec. 15, 2016, ECF No. 30-11.

When plaintiff requested a "Smartboard" – a piece of interactive classroom equipment – from the school, she did not receive one.  An administrator commented to plaintiff that her

failure to use of a Smartboard made her less effective than younger teachers. Compl. at ¶¶ 56-59. Plaintiff argues that this conduct caused such severe stress that she suffered from insomnia, stomach aches, and vaginal hemorrhaging. *Id.* at ¶¶ 69-71.

She received a letter of excess from the DOE on June 25, 2015. It informed her that she was being placed in excess from MS 226. Marcus Decl. at Ex. X, Dec. 15, 2016, ECF No. 30-24. "[A] teacher may be 'excessed' from the school where she is currently assigned when the number of teachers in a certain license area exceeds the allocated positions. The teacher with the least seniority may be removed, but the DOE is obligated to place that person in another assignment somewhere in the system." Def.'s Mem. of Law in Supp. of its Mot. for Summ. J., Dec. 15, 2016, ECF No. 27 ("Def.'s Summ. J. Mot.") at 12 n.6. After receiving the letter, plaintiff became a member of the absent teacher reserve pool ("ATR") for the 2015/2016 academic year; there was no reduction in her salary or benefits. Def.'s Rule 56.1 Statement at ¶¶ 160-63.

In January 2016, MS 226 filed charges against plaintiff based on allegations of incompetence during the 2013/2014 and 2014/2015 academic years. *Id.* at ¶ 164. In April 2016, the DOE and plaintiff resolved these charges through a settlement. Plaintiff agreed to be suspended without pay for one month, take nine hours of coursework at her own expense, and be assigned to the ATR. *Id.* at ¶¶ 165-66; Marcus Decl. at Ex. BB, Dec. 15, 2016, ECF No. 30-28. Plaintiff retired on July 1, 2016. Marcus Decl. at Ex. B, Dec. 15, 2016, ECF No. 30-2 at 14:9-14.

She filed the instant complaint in July 2016, alleging violation of (1) her Fourteenth Amendment Right to Equal Protection pursuant to 42 U.S.C. § 1983; (2) her First Amendment Right to Free Speech pursuant to 42 U.S.C. § 1983; (3) her freedom of speech right pursuant to

New York Constitution Article 1, Section 8; (4) protections against discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"); (5) discrimination and retaliation protections under the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"); (6) protections against discrimination on the basis of plaintiff's national origin pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the NYSHRL, and the NYCHRL; and (7) protections against negligent hiring and supervision under New York common law. *See generally* Compl.

**B. Motion to Dismiss and Motion for Summary Judgment**

In September 2016, defendant filed a motion to dismiss. *See* Def.'s Mem. of Law in Supp. of its Mot. to Dismiss the Compl., Sept. 23, 2016, ECF No. 15.

By an order dated September 30, 2016, the court determined that the case could be more effectively administered if the motion to dismiss were replaced by a motion for summary judgment. Order, Sept. 30, 2016, ECF No. 17. That motion was then filed by defendant in December 2016. *See* Def.'s Summ. J. Mot.

Plaintiff withdrew her Title VII and ADEA claims for age discrimination because she had failed to file a timely charge with the Equal Employment Opportunity Commission. She also withdrew all claims of discrimination based on national origin, pursuant to a settlement she had previously entered into with defendant. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., Dec. 29. 2016, ECF No. 31 ("Pl.'s Opp'n Mem.").

The parties appeared in person with counsel at an evidentiary hearing on the motion for summary judgment. *See* Hr'g Tr., Jan. 9, 2017, ECF No. 39 ("Jan. 9 Hr'g Tr."). The court questioned both plaintiff and the principal she complained against, Ms. White, under oath.

## III. Law

### A. Standard for Summary Judgment

Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all reasonable inferences against the movant." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 247 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted).

### B. Statute of Limitations

#### 1. 42 U.S.C. § 1983

"The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits." *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 210-11 (E.D.N.Y. 2014); *Dory v. Ryan,* 999 F.2d 679,

681 (2d Cir. 1993) (citing *Wilson v. Garcia,* 471 U.S. 261 (1985)). "Since section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to § 1983 is three years." *Thomas v. New York City Dep't of Educ.,* 938 F. Supp. 2d 334, 349 (E.D.N.Y. 2013); *Owens v. Okure,* 488 U.S. 235, 250-51 (1989); *Dimitracopoulos*, 26 F. Supp. 3d at 211.

### 2. NYSHRL, NYCHRL, and New York Tort Claims

"In general, the statute of limitations under the NYSHRL and the NYCHRL is three years." *Dimitracopoulos*, 26 F. Supp. 3d at 211; N.Y. C.P.L.R. 214(2) (CONSOL. 2016); N.Y.C. Admin. Code § 8–502(d).

New York State provides a shorter statute of limitations – one year – for claims brought against schools, school districts, and boards of education. *Dimitracopoulos*, 26 F. Supp. 3d at 211; N.Y. EDUC. L. § 3813(2–b) (MCKINNEY 2016) ("[N]o action or special proceeding shall be commenced against any [officer of a school district, board of education, board of cooperative educational services, or school] more than one year after the cause of action arose.").

### 3. Continuing Violation

Under the continuing violations doctrine, when a plaintiff experiences a "continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (internal quotation marks and citations omitted); *see also Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2001); *Dimitracopoulos*, 26 F. Supp. 3d at 211-12.

In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), the Supreme Court ruled that "discrete discriminatory acts" – such as termination, failure to promote, denial of transfer, or refusal to hire – "are not actionable if time barred, *even when they are related to acts alleged in timely filed charges.*" *Id.* at 113-14 (emphasis added); *Dimitracopoulos*, 26 F. Supp. 3d at 212. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 113.

The "continuing violation" doctrine applies only to harassment claims. It is inapplicable to discrimination and retaliation claims. *Dimitracopoulos*, 26 F. Supp. 3d at 212.

### C.  Constitutional Violations under § 1983

Section 1983 authorizes an action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

### 1.  First Amendment, 42 U.S.C. § 1983

First Amendment rights are not eliminated by public employment. "The mere fact of government employment does not result in the evisceration of an employee's First Amendment rights." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003). A public employee alleging that an adverse employment action was in retaliation for the exercise of First Amendment rights must show that "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest, . . . (2) [plaintiff] suffered an adverse employment action, . . . and (3) the speech was at least a substantial or motivating factor" in the adverse employment action. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)

(quoting *Morrison v. Johnson,* 429 F.3d 48, 51 (2d Cir. 2005) (per curiam)); *see also Cobb v. Pozzi,* 363 F.3d 89, 102 (2d Cir. 2004).

Regarding the first prong of the test, "[s]peech by a public employee is on a matter of public concern if it relates 'to any matter of political, social, or other concern to the community.'" *Johnson*, 342 F.3d at 112 (quoting *Connick v. Myers,* 461 U.S. 138, 146 (1983) and *Garcia v. State Univ. of New York Health Sci. Ctr.,* 280 F.3d 98, 105 (2d Cir. 2001). But, if the speech concerns matters personal to the employee, it cannot be classified as being one of public concern. *Johnson*, 342 F.3d at 112. The government, acting as an employer, then "has greater latitude to discipline" the employee. *Id.* (citing *Connick,* 461 U.S. at 146). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Johnson*, 342 F.3d at 112 (internal quotation marks and citation omitted). While this determination may be fact-intensive, "it presents a question of law for the court to resolve." *Id.*

### 2. Fourteenth Amendment, 42 U.S.C. § 1983

"[Section] 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment. . . . Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

### i. Hostile work environment

To succeed on a hostile work environment claim, plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). "Plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Demoret*, 451 F.3d at 149.

"Isolated incidents typically do not rise to the level of a hostile work environment unless they are of sufficient severity to alter the terms and conditions of employment as to create such an environment." *Id.* (internal quotation marks and citations omitted). "[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello,* 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citation omitted); *Demoret*, 451 F.3d at 149.

The totality of circumstances rule allows consideration of "a variety of factors including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Demoret*, 451 F.3d at 149 (internal quotation marks and citations omitted).

### ii. Disparate Treatment

"Courts analyze claims of disparate treatment under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 . . . (1973)." *Demoret*, 451 F.3d at 151. "Under this framework, the evidentiary burden shifts between the parties, but the ultimate burden of proving discrimination remains with the plaintiff." *See Farulla v. New York Sch. Constr. Auth.*, 277 F. Supp. 2d 140, 146 (E.D.N.Y. 2003).

This burden-shifting standard applies to both claims of age discrimination and retaliation. First, plaintiff must present a *prima facie* case by a preponderance of the evidence. *Hernandez,*

100 F. Supp. 3d at 255 (citing *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999)). A *prima facie* discrimination case requires a showing that: (1) plaintiff belonged to a protected class; (2) plaintiff was qualified for the employment position; (3) plaintiff suffered an adverse employment action; and (4) this adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Chan v. Donahoe*, 63 F. Supp. 3d 271, 293 (E.D.N.Y. 2014) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).

To establish a *prima facie* case of retaliation, plaintiff must show by a preponderance of the evidence: (1) participation in a protected activity; (2) that defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *Chan*, 63 F. Supp. 3d at 295 (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

Once plaintiff has established a *prima facie* case of age discrimination or retaliation, the burden of proof shifts to defendants to offer, by a preponderance of the evidence, a "legitimate non-discriminatory reason" for the employment decision "through the introduction of admissible evidence." *Hernandez*, 100 F. Supp. 3d at 255 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)); *see also Chan*, 63 F. Supp. 3d at 294 (internal quotation marks and citation omitted) ("It is a burden of production, not persuasion; it can involve no credibility assessment.").

If defendant is able to meet this burden, plaintiff must then produce evidence that defendant's proffered reason is a pretext for discrimination. *Jetter v. Knothe Corp.*, 324 F.3d 73, 75-76 (2d Cir. 2003) (citing *McDonnell*, 411 U.S. at 804-05; *see also U.S.P.S. Bd. of Governors*

*v. Aikens*, 460 U.S. 711, 716 (1983) ("In short, the district court must decide which party's explanation of the employee's motivation it believes.").

### 3. Due Process

The Due Process Clause of the Fourteenth Amendment protects individuals from deprivations of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Public employees who have a property right in continued employment cannot be deprived of that right by the state without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). "[T]he root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest. . . . This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* at 542 (internal quotation marks and citations omitted).

Plaintiff must first show that he or she has a property interest in the employment or the benefit that was removed. *Bernheim v. Litt,* 79 F.3d 318, 322 (2d Cir. 1996); *Ramberran v. Dellacona*, No. 07-CV-304, 2008 WL 905217, at *3 (E.D.N.Y. Mar. 31, 2008). "In the employment context, the employee seeking to establish a property interest must show 'more than a[ ] unilateral expectation of it;' instead he must have a 'legitimate claim of entitlement.'" *Kirby v. Yonkers Sch. Dist.*, 767 F. Supp. 2d 452, 463 (S.D.N.Y. 2011) (quoting *Board of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972)). "Thus, a property interest will be established if the government employer 'is barred ... from terminating the employment relationship *without cause.*'" *Kirby*, 767 F. Supp. 2d at 463 (quoting *S & D Maint., Co. Inc. v. Goldin,* 844 F.2d 962, 967 (2d Cir. 1988) (emphasis in original)).

**IV.    Application of Law to Facts**

**A.  NYSHRL, NYCHRL, and New York Tort Claims**

Plaintiff claims that the DOE illegally discriminated against her on the basis of age in violation of the NYSHRL and the NYCHRL, and engaged in negligent hiring and supervision in violation of New York tort law.  These state law claims against the DOE are subject to the one-year statute of limitations provided for by the New York Education Law.  *Dimitracopoulos*, 26 F. Supp. 3d at 211; N.Y. EDUC. LAW § 3813(2–b) ("[N]o action or special proceeding shall be commenced against any [board of education] more than one year after the cause of action arose.");  *Amorosi v. South Colonie Indep. Cent. Sch. Dist.,* 880 N.E.2d 6 (N.Y. 2007) ("[T]he one-year limitation prescribed in Education Law § 3813(2–b) should govern discrimination claims against a school district.").

Plaintiff claims that multiple adverse actions were taken against her, including being forced to teach the ICT class without a co-teacher, being denied Test Ready materials and a Smartboard, and being subjected to excessive classroom observations.  Pl.'s Opp'n Mem. at 11-14; Jan. 9 Hr'g Tr. at 14:4-11.  The "penultimate" adverse action against her was receipt of the letter of excess in June 2015.  Pl.'s Opp'n Mem. at 14; Jan. 9 Hr'g Tr. at 15:6-16:17.  The final discriminatory action against her was the DOE's charges brought against her in January 2016. Pl.'s Opp'n Mem. at 16.

She argues that the one-year bar does not apply when a case concerns a "pattern of practice or policy" rather than "discrete discriminatory acts," but she advances no case law supporting this argument.  *See* Pl.'s Opp'n Mem. at 6.  She improperly relies upon *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), which does not concern the New York Education Law and its one-year statute of limitations.  "[C]laims against the DOE under

the NYSHRL and the NYCHRL are subject to the one year statute of limitations." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 249 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

Plaintiff filed the instant suit on July 8, 2016. *See* Compl. Any allegedly discriminatory actions relating to her claims under the NYSHRL and the NYCHRL and her New York state tort law claims that took place before July 2015 – including the letter of excess – are barred by the one-year statute of limitations. The only theory on which she can proceed is that defendant initiated charges pursuant to Education Law § 3020(a) for incompetence during the two previous academic years.

## B. Constitutional Claims under § 1983

### 1. First Amendment, 42 U.S.C. § 1983

Defendant argues that plaintiff's First Amendment claim must be dismissed because reporting a grievance to a union concerning the conditions of plaintiff's employment is not constitutionally protected speech. Def.'s Summ. J. Mot. at 21-24. Plaintiff responds that reporting the absence of a special education teacher in her ICT class to her union is a matter of public concern and thus protected. Pl.'s Opp'n Mem. at 25-26.

Only speech "made as a citizen on matters of public concern rather than as an employee on matters of personal interest" is protected. *Zelnik*, 464 F.3d at 225. When an employee speaks pursuant to his or her official duties, and not as a private citizen, such speech constitutes matters of personal interest that are not of public concern. *Weintraub v. Bd. of Educ. of City Sch. Dist. of New York*, 593 F.3d 196, 201 (2d Cir. 2010). Speech made "pursuant to" a public employee's job duties is defined as "speech that owes its existence to a public employee's professional responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The inquiry into whether a

public employee spoke "pursuant to" his or her official duties is "a practical one." *Id.* at 424; *Weintraub*, 593 F.3d at 202.

The Court of Appeals for the Second Circuit has determined that an employee of the Board of Education filing a grievance with a union pursuant to the employee's professional responsibilities is not a matter of public concern and therefore not protected under the First Amendment. *Weintraub*, 593 F.3d at 201 (quoting *Garcetti*, 547 U.S. at 418) ("We hold that [plaintiff], by filing a grievance with his union to complain about his supervisor's failure to discipline a child in his classroom, was speaking pursuant to his official duties and thus not as a citizen. Accordingly, [plaintiff's] speech was not protected by the First Amendment, and there is no cause for us to address whether it related to a 'matter of public concern.'").

"[U]nder the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub*, 593 F.3d at 203. Plaintiff's "grievance was pursuant to his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties." *Id.* (internal quotation marks and citations omitted).

In the instant case, plaintiff's speech was directly related to her responsibilities as a teacher. Plaintiff complained to her union because the absence of a special education teacher "took [Ms. White] out of compliance with New York State law," which caused plaintiff "concern for her students." Compl. at ¶¶ 24-25. Reporting a violation of state law to ensure the welfare of students is a duty of a teacher, and "in furtherance of the execution of one of her core duties." *Weintraub*, 593 F.3d at 203. "The lodging of a union grievance is not a form or channel of discourse available to non-employee citizens." *Id.* at 204. Plaintiff's speech was not one of public concern. It is not protected. Plaintiff's First Amendment claim is dismissed.

Plaintiff's free speech claim under the New York State Constitution is also dismissed. Free speech claims under the First Amendment and the New York State Constitution are subject to the same standards. *See Pico v. Board of Education,* 474 F. Supp. 387, 394 (E.D.N.Y. 1979) ("The Claims to freedom of speech . . . under the New York State Constitution are governed by the same principles that apply under the first amendment to the federal constitution."), *rev'd on other grounds*, 638 F.2d 404 (1980), *cert. granted*, 454 U.S. 891 (1981), *aff'd*, 457 U.S. 853 (1982).

### 2.  Fourteenth Amendment, 42 U.S.C. § 1983

#### i.  Hostile work environment

Plaintiff points to several incidents that she claims, both individually and collectively, amount to a hostile working environment. *Harris,* 510 U.S. at 21 (plaintiff can establish that she suffered from a hostile working environment either from an isolated instance of harassment that was "extraordinarily severe" or a series of incidents that were "sufficiently continuous and concerted" to have altered the conditions of her working environment).

She claims that the harassment began when she was forced to teach an ICT class in the 2010/2011 academic year without a special education co-teacher, as was mandated by New York.  According to plaintiff, Ms. White purposely refused to provide a co-teacher on the excuse that plaintiff "could handle" teaching the class by herself.  Pl.'s Local Rule 56.1 Counter-Statement of Undisputed Material Fact, Dec. 29, 2016, ECF No. 32 ("Pl.'s Rule 56.1 Statement"), at ¶¶ 13, 20-27, 31-34.  Plaintiff integrated a movie into her ICT curriculum to fill a gap in the lesson plan that would otherwise be taught by a co-teacher.  *Id.* at ¶ 37.  When Ms. White learned that plaintiff was showing the movie, she was reported to have said, according to plaintiff, "I wouldn't [allow] my son in your class."  *Id.* at ¶¶ 35-38.  Ms. White contends that

she made this statement because she thought that plaintiff should not be showing a movie to students who had low reading scores.  *Id.* at ¶ 38.  Defendant also responds that no substitute teacher was available.  *Id.* at ¶ 28.

According to plaintiff, the school criticized her for failing to use a Smartboard in her classroom.  *Id.* at ¶¶ 123-140.  She claims that she repeatedly asked the school for this equipment, but that her requests were denied.  *Id.* at ¶¶ 107-115.  Several administrators allegedly suggested that plaintiff observe younger teachers' methods and use of a Smartboard, even though plaintiff was unable to do so without having the necessary equipment.  *Id.* at ¶¶ 123-140.  Defendant responds that plaintiff had access to a Smartboard in the library, and that the school simply did not have funding to place a Smartboard in every classroom.  Def.'s Rule 56.1 Statement at ¶¶ 113-14.

Ms. White testified that when she became principal of MS 226, the school had only one Smartboard.  Jan. 9 Hr'g Tr. at 29:17-25.  She applied for special grants, and was able to purchase some Smartboards.  *Id.*  She explained that the school has never had enough funding to provide every teacher with a Smartboard.  Smartboards were allocated, not based on teachers' ages, but on whether they had demonstrated technological skill and interest.  *Id.* at 29:17-30:20.

Plaintiff claims that the administrators at MS 226 intentionally withheld Test Ready materials from her, but gave such materials to younger teachers.  Def.'s Rule 56.1 Statement at ¶¶ 141-48, 217-18.  They were needed to adequately prepare students for state examinations.  Students' performance on these tests constitute a significant percentage of a teacher's ratings.  Defendant, it is claimed, intentionally withheld this material from plaintiff to discredit her and eventually file charges against her.  *Id.* at ¶¶ 141-48, 217-18; Pl.'s Opp'n Mem. at 13.  Defendant responds that the school did not have a sufficient number of the Test Ready materials, but that

plaintiff could have made copies of the material for her students. Def.'s Rule 56.1 Statement at ¶¶ 143-48; Jan. 9 Hr'g Tr. at 31:19-32:6.

Plaintiff insists that she was subjected to "excessive and unwarranted" classroom observations, which were "intended to fabricate a case against [her] effectiveness in the classroom." Pl.'s Opp'n Mem. at 13. She claims that the twenty informal classroom checks she experienced in the 2014/2015 academic year were "ill intended" by Ms. White "to target senior teachers by giving them increased informal observations and increased negative review." *Id.* at 13-14. Younger teachers were allegedly subjected to classroom observations far less frequently. *Id.* at 17; Pl.'s Rule 56.1 Statement at ¶¶ 202-06. She received ratings of "Ineffective" for the 2013/2014 and 2014/2015 academic years. Pl.'s Rule 56.1 Statement at ¶ 79; Marcus Decl. at Ex. BB, ECF No. 30-28.

Defendant does not deny conducting classroom observations, and asserts that the observations were necessary to evaluate plaintiff's effectiveness. According to defendant, the observations revealed that plaintiff's teaching techniques were ineffective and that she failed to implement recommendations. Pl.'s Rule 56.1 Statement ¶¶ 79-82, 94-106; *see* Marcus Decl. at Exs. L-W, ECF No. 30-12 - 30-23 (evaluations of plaintiff and school's recommendations for improvement). Ms. White explained at the summary judgment hearing that when she became principal of MS 226, the school had been categorized as one of the few schools in the state that was "persistently dangerous," with assaults among students and on teachers. Jan. 9 Hr'g Tr. at 27:7-20. Ms. White met with state and city authorities, and after implementing their recommendations, the school was removed from the "persistently dangerous" categorization. *Id.* at 27:21-29:16. One of the changes Ms. White claims to have implemented was a thorough

review of the faculty, which included frequent observations of all teachers, regardless of their age. *Id.*

Plaintiff contends that in November 2014, she allowed one of her students to leave the classroom to use the restroom. The student encountered Ms. White in the hallway, and when the student informed the principal that plaintiff was his teacher, Ms. White allegedly responded, "Eww, go back to class." Pl.'s Rule 56.1 Statement at ¶¶ 116-18; Pl.'s Opp'n Mem. at 22. This statement is excluded as hearsay. Jan. 9 Hr'g Tr. at 17:12-22.

Finally, plaintiff explains that the letter of excess she received in June 2015 was issued illegally, because such letters are provided in accordance with seniority and she was one of the most senior teachers at the time. Pl.'s Opp'n Mem. at 15; Jan. 9 Hr'g Tr. at 15:16-16:17.

Defendant responds that the letter of excess was issued appropriately. Def.'s Summ. J. Mot. at 16. Ms. White testified that between 2008 and 2015, the student population was reduced by nearly half, requiring an attendant reduction in faculty. Jan. 9 Hr'g Tr. at 32:10-21; *see also id.* at 22:25-23:11. Plaintiff was the only teacher at MS 226 who had a Reading license, and because MS 226 did not have a Reading program, according to defendant, plaintiff had the least seniority in the category of teachers who had a Reading license and was therefore eligible for excessment. Def.'s Rule 56.1 Statement at ¶¶ 156-59; Jan. 9 Hr'g Tr. at 32:10-35:3. Ms. White also explained that excessing plaintiff was not based on a discriminatory motive; other teachers both over and under the age of 40 were excessed at the same time as plaintiff. Ms. White estimated that a third of the teachers currently employed at the school are over the age of 40, and that approximately the same number of teachers over 40 years of age and under 40 years of age have been excessed over the last few years. Hr'g Tr. at 35:6-36:24.

Plaintiff points to an exception to these seniority excessing rules under the contract between her union and the DOE, under which she should have been considered a teacher with seniority in the English Language Arts program:

> Teachers serving pursuant to an academic license where few opportunities exist for a full program in the license area will be considered for seniority purposes along with licensed teachers of the subject in which they have taught for the most recent three years. *A list of license areas subject to excessing under this Rule will be made jointly by the Board and the Union, who will review the listed licenses every two years.* Should the parties agree that opportunities for a full program in any listed license are sufficient, it will be removed from the list, and this excessing Rule will no longer apply to holders of the license.

Decl. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Novins Decl.") at Ex. 3, Dec. 29, 2016, ECF No. 33-3 at Art. 17, Rule B.3-H (emphasis added). She argues that because she had been a teacher in the English Language Arts program for over three years, she should have been considered a senior teacher in that program, not in the Reading program, and therefore ineligible for excess. Pl.'s Opp'n Mem. at 15; Jan. 9 Hr'g Tr. at 38:3-39:1 Defendant points out that this exception does not apply to plaintiff, because the DOE and plaintiff's union never created the list contemplated by the rule, making plaintiff a non-senior teacher in the Reading program who was legally excessed. Jan. 9 Hr'g Tr. at 39:4-40:2. There is no evidence of discriminatory intent in the procedure by which plaintiff was excessed.

These incidents relied upon by plaintiff – either viewed individually or collectively – are insufficient to amount to a hostile work environment claim. None of them are severe; disputes over the availability of materials and technology are commonplace in schools with limited funds. They do not rise to the level of actionable hostility. Nor has plaintiff shown that the classroom observations were carried out in a hostile or extraordinarily severe manner. The records defendant submits indicate that plaintiff's teaching techniques were falling below the school's standards, and that the observations were carried out to give plaintiff a warning in an attempt to

help her improve. *See* Marcus Decl. at Exs. L-V, ECF No. 30-12 - 30-22. Ms. White's comment regarding her son and her comment to another student about plaintiff are – if true – inappropriate, but do not constitute "discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21.

Considering these incidents together, they do not amount to a hostile work environment. *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (internal quotation marks and citations omitted) ("The factors must be considered 'cumulatively,' so that we may 'obtain a realistic view of the work environment.'"). "A nasty, unpleasant workplace is not a hostile work environment." *Hammond v. Zurich Am. Ins. Co.*, No. 09-CV-3219, 2010 WL 3236777, at *6 (E.D.N.Y. Aug. 12, 2010). The conduct in the instant matter is neither particularly severe nor excessively frequent, plaintiff was not physically threatened, and the conduct did not unreasonably interfere with her work performance. *Id.*

Plaintiff cannot demonstrate that any of these incidents were actions taken as a result of her age. The only link between the school's actions and her age plaintiff points to is the testimony of Assistant Principal David Possner and teacher Clairesa Clay, who stated that Ms. White targeted teachers at MS 226 over the age of forty to bring in younger teachers for less money. Jan. 9 Hr'g Tr. at 12:9-22; Novins Decl. at Ex. 2, Dec. 29, 2016, ECF No. 33-2, at 21:21-23:15; Pl.'s Rule 56.1 Statement at ¶¶ 191, 202-06. Aside from these unsupported statements, plaintiff has made no showing that the workplace constituted a "pervasively hostile and abusive" environment created based on her age. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is

actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.").

## ii. Disparate Treatment

Plaintiff did not meet the third prong of the *prima facie* test, showing that she suffered an adverse employment action. "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 135 (7th Cir. 1993).

Being subjected to frequent performance evaluations in a situation such as the instant one, where a principal is trying to improve an inadequate school, does not constitute a materially adverse employment action. *Sotomayor*, 862 F. Supp. 2d at 254. Frequent observations of plaintiff's classroom are insufficient to constitute an adverse employment action. They were designed to improve, not to destroy. Nor is "[c]riticism of an employee in the course of evaluating and correcting her work" an adverse employment action. *Id.* (citing *Weeks v. New York State Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001). No proof has been provided that other, younger, teachers received fewer evaluations. Ms. White testified at the court's evidentiary hearing that as part of her attempt to increase the safety and standing of the school, she required every teacher to undergo observations, regardless of their age. Jan. 9 Hr'g Tr. at 27:7-29:16; *see also id.* at 6:12-7:4. There is no proof that plaintiff was singled out for frequent

observations due to her age; all MS 226 teachers were regularly observed in an effort to improve the school. *Id.*

Becoming a member of the ATR also does not by itself qualify as a materially adverse employment action. Plaintiff did not experience a change in salary or benefits after she received an appropriate letter of excess, a further indication that she did not suffer an adverse employment action. Def.'s Rule 56.1 Statement at ¶¶ 160-63; Pl.'s Rule 56.1 Statement at ¶¶ 160-63. "If an employee earns the same salary, has the same benefits, works the same hours . . . and has the same opportunities for promotion following a transfer then there is no adverse employment action, even if the employee is extremely unhappy about it." *Pimentel v. City of New York*, No. 00-CIV-326, 2002 WL 977535, at *4 (S.D.N.Y. May 14, 2002), *aff'd*, 74 F. App'x 146 (2d Cir. 2003). "[A]ctions such as negative employment evaluation letters may . . . be considered adverse." *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). "[S]uch appraisals must generally trigger other negative consequences to the terms and conditions of the plaintiffs [sic] employment in order to qualify as a materially adverse change." *Sotomayor*, 862 F. Supp. 2d at 254; *Browne v. City Univ. of New York*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss, does not constitute an adverse employment action.").

In some circumstances, excessing might be so humiliating to a teacher devoted to her profession as to constitute actionable discrimination. This is not such a case.

Plaintiff did experience a change in job title; she went from being a teacher assigned to the English Language Arts department to a member of the ATR pool. Pl.'s Rule 56.1 Statement at ¶¶ 160-61. But the Court of Appeals for the Second Circuit has determined that "[a] teacher who is 'excessed' is not fired, but rather is reassigned to another position in the school system"

has not suffered an adverse employment action. *Galabya*, 202 F.3d at 640 ("Appellant does not allege that appellee denied him an available transfer, that appellee failed to pay his salary during the interim period, or that the delay in any way harmed his career," which is why he did not meet his burden of establishing a *prima facie* case); *see also Jeter v. Bd. of Educ. of NY*, 99-CV-2537, 2004 WL 5584463, at *8 (E.D.N.Y. Mar. 30, 2004) (holding plaintiff who was excessed did not suffer an adverse employment action because the excess did not change plaintiff's "salary, benefits, hours or opportunities for promotion").

Plaintiff has not established that being excessed caused any change in her opportunity for promotion. She argues that being in the ATR pool "should be seen as materially less suited to her skills and expertise, and materially less conducive to her career advancement." Pl.'s Opp'n Mem. at 15. She did not show *how* her career advancement was hampered by being in the ATR. Since she did not suffer an adverse employment action, her disparate treatment claim under the Fourteenth Amendment fails.

Even if plaintiff were to argue that the adverse employment action was the charges brought against her by the DOE – not the letter of excess and the actions that preceded it – she would not be able to make out a *prima facie* discrimination claim. "[D]istrict courts in this Circuit have disagreed as to whether an investigation into disciplinary charges that does not result in any discipline may be sufficient constitute an adverse action in the retaliation context." *Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 177 n.30 (E.D.N.Y. 2015), *motion for relief from judgment denied*, No. 11-CV-2827, 2015 WL 7455842 (E.D.N.Y. Nov. 23, 2015), and *aff'd*, No. 15-1103-CV, 2016 WL 6069229 (2d Cir. Oct. 17, 2016). "[T]he institution of disciplinary proceedings may in some cases be sufficient to constitute adverse action. *See Weber*

*v. City of New York,* 973 F. Supp. 2d 227, 268 (E.D.N.Y. 2013)." *Campbell*, 93 F. Supp. 3d at 177 n.30.

Several courts in this Circuit have found that "the application of the employer's disciplinary policies to the employee, without more, does not constitute adverse employment action." *Chang v. Safe Horizons,* 254 F. App'x 838, 839 (2d Cir. 2007) (internal quotation marks and alterations omitted) (quoting *Joseph v. Leavitt,* 465 F.3d 87, 91 (2d Cir. 2006)). This court need not decide whether the commencement of an investigation alone would suffice to establish an adverse employment action. In the instant case, plaintiff chose to settle the charges rather than participate in a full hearing and utilize her right to appeal. N.Y. EDUC. LAW § 3020a(5). Accepted charges through a settlement cannot be considered as adverse employment actions. Even if part of the settlement was a temporary unpaid leave; plaintiff retained her position as an ATR member and was not terminated.

Because "[t]he *McDonnell Douglas* framework has been adopted for use in discrimination actions brought under the respective Human Rights Laws of the State and City of New York," plaintiff's claims under the NYSHRL and NYCHRL also fail. *Melman v. Montefiore Med. Ctr.*, 946 N.Y.S.2d 27, 30 (N.Y. App. Div. 2012). As noted *supra* in section IV.A, the one-year statute of limitations bars all state law claims against the DOE, except plaintiff's allegation that the charges her employer brought against her in January 2016 under Education Law § 3020a were discriminatory. Because plaintiff has not shown that these charges constituted an adverse employment action, her state law claims fail.

### iii. Due Process

Plaintiff argues that receiving a letter of excess and being reassigned to the ATR pool constitutes a violation of the Due Process Clause.

Plaintiff's status as a tenured teacher provides her with a "constitutionally protected property interest in [her] continued employment . . . [and] is sufficient to trigger [her] due process rights." *Adams v. New York State Educ. Dep't,* 08-CIV-5996, 2010 WL 624020, at *30 (S.D.N.Y. Feb. 23, 2010); *see also Ramberran*, 2008 WL 905217, at *4 ("[Plaintiff] has a property right in his employment as a tenured teacher.").

But, as courts in this circuit have recognized, even if a plaintiff has a property interest in continued employment, termination or a change in the employee's duties does not violate due process if the employee continues to be paid the same amount as she received before the change. *O'Connor v. Pierson,* 426 F.3d 187, 199 (2d Cir. 2005) ("[N]o court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties."); *Barnes v. Pilgrim Psychiatric Ctr.*, 860 F. Supp. 2d 194, 204 (E.D.N.Y. 2012) ("Several district court decisions have interpreted *O'Connor* to bar the finding of a Constitutionally protected property right where, as here, an employee is reassigned from his or her usual duties, but remains on full salary and benefit status."); *Pappas v. New York City Bd. of Educ.,* 07-CV-4312, 2011 WL 128509, at *6 (E.D.N.Y. 2011) (plaintiff "was not deprived of a property interest when she was [reassigned] because she continued to draw a full salary"); *Norgrove v. New York City Dept. of Educ.,* 08-CV-2202, 2011 WL 441678, at *4 (E.D.N.Y. 2011) (same).

Plaintiff did experience a change in her usual duties when she became a member of the ATR pool. But, her salary and benefits remained the same. Def.'s Rule 56.1 Statement at ¶¶ 160-63; Marcus Decl. at Ex. X, Dec. 15, 2016, ECF No. 30-24. Because her reassignment was not accompanied by a pecuniary loss, she was not deprived of the constitutionally protected right to due process.

Plaintiff had a right to grieve. She chose not to exercise this right because she had not been satisfied with the result of a previous grievance:

THE COURT: Well, I don't understand why that couldn't have been grieved under the contract. I don't understand why that's in the federal court when it should have been corrected in the system.

MR. NOVINS: My client testified that the grievance would be the following year --

THE COURT: But she didn't grieve it.

MR. NOVINS: After the one year of being pushed around as a substitute teacher, my client felt it would be no change and then she retired.

THE COURT: Why couldn't -- usually you can grieve these things immediately after the event. I don't understand why she had to wait a year to grieve it.

MS. HARRIS: They would have still had me as an ATR.

THE COURT: That may be, but the moment you found why you were being excessed as you were, right? And you found out why, didn't you? Immediately?

MS. HARRIS: Not immediately.

THE COURT: When did you find out?

MS. HARRIS: I found out when I looked at the contract. I wasn't excessed until the last year of school.

THE COURT: I understand.

MS. HARRIS: So the summer went by, and I became an ATR.

. . .

THE COURT: Why didn't you go to the union?

MS. HARRIS: Because I had just went through a grievance with the union with her and --

THE COURT: Well, so you didn't like the results of the grievance?

MS. HARRIS: No, because my scores with my students was very high for the state exam. I got a 17, one point from highly effective.

THE COURT: Let's assume that you are a good teacher. I am not contesting that, your testimony on that. . . . But you could have grieved right at that point when you were informed, and I take it you were saying to yourself, why should I grieve, last time I grieved I didn't get any benefit. Right?

MS. HARRIS: Basically, yes.

Hr'g Tr. at 40:13-42:16. Plaintiff had an avenue of administrative recourse available to her when she disagreed with the letter of excess, but chose not to take it.

New York Education law provides a plaintiff with additional due process protection:

> Prior to terminating or imposing any kind of disciplinary action, the DOE must serve a tenured teacher with disciplinary charges. N.Y. Educ. Law § 3020a(3)(c)(1). The teacher will then have the opportunity to contest the charges before a neutral arbitrator. *Id.* The teacher also has the opportunity to be represented by his union and counsel during the arbitration. The procedures the procedures outlined by § 3020-a of the Education Law, when followed, are "more than adequate procedural safeguards to satisfy the plaintiff's due process rights under the Fourteenth Amendment." *Montefusco v. Nassau Cty.,* 39 F. Supp. 2d at 239-40 (quoting *Sullivan v. Board of Educ. of the Eastchester Union Free Sch. Dist.,* 131 A.D.2d 836, 838, 517 N.Y.S.2d 197, 199 (N.Y. App. Div. 1987) (addressing procedures dictated by § 3020-a)). Accordingly, [plaintiff's] due process claims fail.

*Ramberran*, 2008 WL 905217, at *4.

A few months after issuing the letter of excess, the DOE formally charged plaintiff with incompetence pursuant to New York Education Law § 3020a. Def.'s Rule 56.1 Statement at ¶ 164; Marcus Decl. at Ex. AA, Dec. 15, 2016, ECF No. 30-27. The charges were resolved

through a settlement, and plaintiff agreed to waive her right to a hearing. Marcus Decl. at Ex. BB, Dec. 15, 2016, ECF No. 30-28. She was represented by an attorney throughout the proceeding, had an opportunity to defend the complaints against her, and was able to file a counter-claim against the DOE. *Id.* Although this proceeding did not directly pertain to the letter of excess, it provided plaintiff with ample opportunity to be heard under the "adequate procedural safeguards" of the New York Education Law. *Ramberran*, 2008 WL 905217, at *4. Her due process rights have not been violated.

### 3. Statute of Limitations on § 1983 Claims

Because plaintiff's First Amendment and Fourteenth Amendment claims under § 1983 are dismissed, the court need not decide whether her claims are barred by a three-year statute of limitations, and whether the continuing violation doctrine applies.

### 4. *Monell* Liability

Because plaintiff's § 1983 claims are dismissed, the court need not decide whether plaintiff was able to establish that the DOE engaged in an official policy or custom through its employees that denied plaintiff of a constitutional right under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978).

## V. Conclusion

Defendant's motion for summary judgment is granted. No costs or disbursements are granted. The case was brought in good faith. It was based upon plaintiff's misconception of the law and the facts.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: February 2, 2017
      Brooklyn, New York